1 F.3d 1233
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
INTA-ROTO MACHINE, INCORPORATED, a Virginia corporation,
Plaintiff-Appellant,
v.
THE CROWELL CORPORATION, a Delaware corporation,
Defendant-Appellee.
 No. 92-2396.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 9, 1993.
Decided: August 17, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.
 ARGUED: S. Miles Dumville, HAZEL & THOMAS, P.C., for Appellant.
 Lewis Franklin Powell, III, HUNTON & WILLIAMS, for Appellee.
 ON BRIEF: Pamela G. Parsons, HAZEL & THOMAS, P.C., for Appellant.
 John Charles Thomas, Harry M. Johnson, III, HUNTON & WILLIAMS, for Appellee.
 E.D.Va.
 AFFIRMED
 Before MURNAGHAN and LUTTIG, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Inta-Roto Machine, Inc. of Virginia and appellee The Crowell Corporation of Delaware entered into a settlement agreement to resolve a lawsuit by referring the underlying dispute to a special master. The special master presented his final report to the district court, recommending the payment of $988,073 from Inta-Roto to Crowell. Inta-Roto filed objections. After a formal hearing, the district court overruled the objections, accepted the report, and entered judgment in favor of Crowell for $823,712.29, representing special master's recommendation less the amount in escrow. Inta-Roto brings this appeal. We affirm.
 
 
 2
 The contract from which the dispute arose relates to a highly technical industrial process utilized in Crowell's manufacturing activity. Although the technical aspects of the contract are not central to the issue in this appeal, a brief summary is helpful to its understanding.
 
 
 3
 During 1989, Inta-Roto contracted with Crowell to supply an integrated coating/laminating line to produce Crowell's product for the packaging trade. As briefly summarized by the special master's report, the contract required that the machine consist of: primary substrate unwind with splicer, foam sheet unwind with splicer, auxiliary substrate unwind, hot melt coater/laminator, squeeze roll meter for latex coating, Mayer rod coater, coated-produced dryer (by Crowell), laminator roll with several chill rolls, secondary substrate unwind with splicer, and finished product rewind with splicer.
 
 
 4
 The equipment provided by Inta-Roto did not function properly in delivering specified coating weights, coating uniformity, and an acceptable down time at product changeover. Inta-Roto's attempts to modify the equipment were not acceptable to Crowell, and after the latter withheld payment on the contract, Inta-Roto brought an action for breach of contract. Crowell filed a counterclaim alleging IntaRoto's failure to comply with contract specifications, breach of express warranties, breach of implied warranties, fraud, and negligent misrepresentation, and requesting specific performance. Following the completion of substantial pretrial procedures, the parties agreed that the technical nature of the issues involving unique industrial machinery would require extensive and complex expert advice and testimony. They were also concerned that a lay judge or jury would have difficulty resolving the technical issues. They, therefore, entered into a stipulation, settling their dispute by referring it to a special master with the requisite technical expertise to be appointed by the court from among their nominees.
 
 
 5
 The settlement agreement, entitled "Stipulation of Settlement Agreement and Release" provided, among other things, that its purpose was to resolve all claims asserted by either party in the then-existing district court litigation. It assigned near plenary authority to the special master, emphasizing that his decision was to be conclusive and binding as to any technical requirement of the contract. They agreed further that he had discretion to meet jointly or separately with any of their representatives and to perform tests on the equipment in the manner deemed appropriate. He was given authority to determine modifications necessary to complete contract requirements and, if necessary, compute the amount of money required to engage a third party to perform the modifications. The settlement agreement emphasized that the procedure was designed to resolve the dispute without the need for a trial on the merits and that the decision of the special master "shall be conclusive and binding as to any technical requirements of the contract." However, upon receipt of the master's report, the parties could file objections with the court. In limiting judicial oversight, the parties agreed that the court "in its sole discretion" should determine whether there was any legal issue that required briefing and argument.
 
 
 6
 On February 21, 1991, the special master issued his initial report delineating the new items and modifications required of Inta-Roto to fulfill its contractual obligations. Inta-Roto filed objections to the report in the district court complaining that the master failed to follow the court directed step-by-step process in completing his investigation; specifically, that he failed to review contract documents, failed to observe and test the equipment, but instead relied on the ex parte representations by Crowell; that he, in effect, rewrote the parties' contract by requiring Inta-Roto to furnish unintended items; and that his recommendations went beyond the scope of the contract. It also contended that the special master improperly considered parol evidence, specifically, pre-contract oral statements of Inta-Roto representatives. Additionally, it complained that Crowell furnished the special master a notebook containing documents extraneous to the contract.
 
 
 7
 The district court conducted a hearing on Inta-Roto's objections on January 8, 1992, considered the positions of the parties, and questioned the special master. Both the court and the parties reviewed the contents of the offending notebook in chambers. The court, in overruling Inta-Roto's objections, noted that the settlement agreement granted the special master discretion to meet jointly or separately with the parties' engineering representatives and to observe and conduct such tests of the equipment as he deemed appropriate. It rejected IntaRoto's contentions that the master had not followed the court's directions to "follow an orderly step-by-step process" in reaching his recommendations. In upholding the master's decision, the court found that he had performed his investigation according to the terms of the contract. It found that both Inta-Roto and Crowell representatives furnished information to the master and were involved in discussions with him. It also found that Crowell's notebook had been given to the master but that it was within the parameters of the master's contractual authorization. It observed that, in any event, nothing in the notebook could have been prejudicial to an impartial recommendation.
 
 
 8
 On August 4, 1992, the master filed his final report recommending that Inta-Roto pay $988,073 to Crowell-the unpaid sum required for a third party to complete the contract. Inta-Roto reasserted its previous objections, which the district court had already rejected, and objected to the cost of third-party repairs. On October 5, 1992, the district court upheld the special master's final determination and entered judgment in Crowell's favor for $823,712.29, the amount recommended by the master less amounts held in escrow.
 
 
 9
 On appeal, Inta-Roto raises the same concerns it raised in the district court. Crowell, on the other hand, argues principally that in the settlement agreement Inta-Roto impliedly waived its right to appeal and that the special master's factual findings are uncontestable. While we cannot agree that Inta-Roto has no right to appeal a final judgment of the district court adopting the special master's report, we agree that the master's findings were primarily factual and according to the terms of the settlement, conclusive. See Fed. R. Civ. P. 53(e)(4).
 
 
 10
 In our view, the only disputed elements of the contract relate to its technical requirements. Inta-Roto, as well as Crowell, insisted that the master's authority to resolve them was to be absolute. The agreement executed by the parties, correspondence between them, and their representations to the district court all reflect that central concern. They were involved in a lawsuit so purely technical in nature that even the lawyers were having difficulty with it. They stressed to each other and the court that the lawsuit was suitable for an alternate dispute resolution procedure. The agreement they effected settled the pending action, and they crafted an alternate procedure designed to reduce judicial oversight to a minimum. In its representations to us, Inta-Roto suggests that it was led to believe the sum required to modify the contract was considerably less than the amount finally recommended by the master. Unfortunately for it, however, the agreement left the determination of that sum to the master.
 
 
 11
 Inta-Roto's legal objections can be summarized as a complaint that the special master departed from the terms of the settlement agreement in making his investigation and recommendation. The district court held that he did not. Reviewing the broad grant of authority given to the master by the settlement agreement and his representations accepted by the district court, we agree. Even if true, these allegations do not amount to fundamental errors of legal interpretation reserved as grounds for objecting to the special master's report.
 
 
 12
 The parties made commendable efforts to resolve an action involving technical, factual issues through an alternate dispute resolution mechanism. They agreed to create a procedure largely free from judicial supervision or intervention. The risk that each undertook was there would be only small chance of relief through the judicial appellate process. We find no error.
 
 
 13
 The judgment of the district court is therefore
 
 
 14
 AFFIRMED.